FILED
2021 Dec-08 PM 02:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

JENNIFER ANNE PEOPLES,     )
     )
    Plaintiff,     )
     )
v.     )     4:20-cv-00740-LSC
     )
ANDREW SAUL,     )
Commissioner of     )
Social Security,     )
     )
    Defendant.     )

## MEMORANDUM OF OPINION

## I.    Introduction

Plaintiff, Jennifer Anne Peoples, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB"). Peoples timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff was 28 years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a twelfth-grade education with special education. (Tr. at 185.) Her past work experience includes employment as a cashier, conveyor

tender, and poultry boner. (Tr. at 47, 65–67, 185.) Plaintiff claims that she became disabled on September 19, 2016, as a result of depression and anxiety. (Tr. at 171.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *Id.* The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that

"substantial medical evidence in the record" adequately supported the finding that the plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id.*

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of her past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent her from performing her past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the

plaintiff can perform other work, the evaluator will find her not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Plaintiff has not engaged in SGA from her alleged onset date of September 19, 2016 through her date last insured of September 30, 2017. (Tr. at 43.) According to the ALJ, Plaintiff's depression and anxiety are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ determined that Plaintiff has the following RFC:

> [T]o perform a full range of work at all exertional levels but with the following nonexertional limitations: able to perform simple, routine and repetitive tasks, occasional interaction with supervisors, co-workers, incidental interaction, with the general public in performance of work related tasks, can respond appropriately to changes in routine work setting which are gradual and infrequent, time off task can be accommodated by normal work breaks.

(Tr. at 45.)

According to the ALJ, Plaintiff has past relevant work as a conveyor tender and poultry boner. (Tr. at 47.) The ALJ enlisted a vocational expert ("VE") and

4

used Medical-Vocation Rules as a guideline for finding whether an individual with Plaintiff's age, education, work experience, and residual functional capacity would be able to perform any of Plaintiff's past relevant work. (*Id.*) The ALJ determined, with the help of the VE, that Plaintiff was able to perform her past work as it is actually and generally performed. (*Id.*) The ALJ concluded his findings by stating that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from September 19, 2016, the alleged onset date, through September 30, 2017, the date last insured." (*Id.*)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1989)).

6

## III.  Discussion

Plaintiff alleges that the ALJ's decision should be reversed and remanded for three reasons. First, Plaintiff argues that the ALJ rejected the opinions of Dr. Fleming, the examining consultative psychologist, without showing good cause and without stating at least "some measure of clarity" for doing so. Second, Plaintiff contends that the ALJ's determination that she can perform her past work is not supported by substantial evidence. Third, Plaintiff argues that the ALJ's decision was not based on substantial evidence because the hypothetical questions posed to the VE did not include a limitation of "difficulty with understanding and remembering instructions."

### A.    Weight Given to Dr. Fleming's Opinion

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ."  20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources, and non-treating medical sources over non-examining medical sources.  *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, a treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). "Good

cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

On the other hand, the opinions of a one-time examiner or of a non-examining source are not entitled to the initial deference afforded to a physician who has an ongoing treating relationship with a plaintiff. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Still, though, medical consultants or medical experts are highly qualified medical specialists who are experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. § 404.1527(e)(2)(iii), 416.927(e)(2)(iii); Social Security Ruling ("SSR") 96-6p, 1996 WL 374180. Indeed, a medical expert's opinion may be entitled to greater weight than the opinions of treating or examining sources in appropriate circumstances, such as when the medical expert has reviewed the complete case record. *See* SSR 96-6p, 1996 WL 374180. In short, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion."

9

*McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth*

*v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

The Court must also be aware of the fact that opinions such as whether a

claimant is disabled, the claimant's RFC, and the application of vocational factors

"are not medical opinions, . . . but are, instead, opinions on issues reserved to the

Commissioner because they are administrative findings that are dispositive of a case;

i.e., that would direct the determination or decision of disability." 20 C.F.R. §§

404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the

claimant's "condition and the medical consequences thereof, not their opinions of

the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such

statements by a physician are relevant to the ALJ's findings, but they are not

determinative, as it is the ALJ who bears the responsibility for assessing a claimant's

RFC. *See, e.g.*, 20 C.F.R. § 404.1546(c).

On May 09, 2017, Plaintiff underwent a consultative psychological evaluation

performed by Dr. Samuel Fleming. (Tr. at 264.) Plaintiff reported no prior history of

mental health treatment. (*Id.*) During examination, Dr. Fleming noted that Plaintiff

presented with no evidence of significant depression but had deficient attention and

concentration. (Tr. at 265.) Dr. Fleming determined that Plaintiff had adequate

memory, marginally adequate abstraction, and normal thought processing. (*Id.*)

Plaintiff reported that she could perform routine chores and was able to use Facebook. (Tr. at 265–66.) Dr. Fleming diagnosed Plaintiff with moderate major depression, panic disorder with agoraphobia, and borderline intellectual functioning. (Tr. at 266.) Dr. Fleming indicated that Plaintiff would have difficulty understanding, carrying out, or remembering instructions. (Tr. at 267.) Dr. Fleming also noted that Plaintiff did not seem capable of responding appropriately to supervisors, coworkers, or work pressures. (*Id.*)

On May 24, 2017, Dr. Kirstin Bailey, a state agency psychologist, reviewed the medical evidence, including Dr. Fleming's report, and concluded that Plaintiff had severe impairments due to depression and anxiety. (Tr. at 86–97.) Dr. Bailey indicated Plaintiff would have no more than moderate limitations during the relevant period. (Tr. at 91.) Dr. Bailey noted that Plaintiff could carry out simple instructions and sustain attention for simple, routine, and familiar tasks for periods of at least two hours. (Tr. at 94.) Dr. Bailey indicated that Plaintiff would benefit from repetitive work but should avoid close coordinated work with others, excessive workloads, quick decision making, rapid changes, and multiple demands. (*Id.*) Dr. Bailey determined that Plaintiff could have casual contact with the public or coworkers. (Tr. at 94–95.)

The ALJ gave only partial weight to Dr. Fleming's opinion because it was only partially consistent with the longitudinal record of evidence. (Tr. at 46.) Substantial evidence supports that decision. The ALJ found that the societal limitations mentioned by Dr. Fleming regarding interactions with others was inconsistent with the longitudinal record and Plaintiff's daily activities. Plaintiff testified that she went to Walmart, maintained adult relationships, and would occasionally eat out. (Tr. at 74–76.) The ALJ also noted that Plaintiff lost her past jobs due to transportation issues rather than societal limitations. (Tr. at 46, 66.) Plaintiff admitted to Dr. Fleming that "emotional issues did not have an effect on her work," and that she had no prior history of mental health treatment. (Tr. at 264.) In fact, the record shows that Plaintiff sought no mental health treatment during the relevant period and attended therapy for the first time more than a year after her insured status expired. (Tr. at 269–80). Further, the record shows that Plaintiff took no psychotropic medication during the relevant period. (Tr. at 264, 279.)

As a one-time examiner, Dr. Fleming's opinion was not entitled to any deference. *See McSwain*, 814 F.3d at 619. Even if Dr. Fleming was a treating physician, good cause existed to limit the weight given to his opinion.  Dr. Fleming's opinion "was not bolstered by the evidence and evidence supported a contrary finding. *Phillips*, 357 F.3d at 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440).

Furthermore, the ALJ clearly explained his reasoning and articulated with some measure of clarity why only partial weight was given to Dr. Fleming's opinion. *Winschel*, 631 F.3d at 1179. Thus, ALJ did not err in his decision to place limited weight on Dr. Fleming's opinion.

Plaintiff argues that the degree of suspicion standard from *Wilder v. Chater*, 64 F.3d 335, 337–38 (7th Cir. 1995) applies in this case. However, the Eleventh Circuit has considered *Wilder* and has yet to find it applicable to a case under consideration. *See Arnold v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 772, 779 (11th Cir. 2018) (finding *Wilder* inapplicable where the record contained multiple medical opinions about the pertinent issue); *Bush v. Soc. Sec. Admin, Comm'r*, 770 F. Appx. 490 (11th Cir. 2019) (finding *Wilder* distinguishable where the ALJ assigned little weight to a psychologist's opinion as opposed to disregarding it entirely); *Jackson v. Soc. Sec. Admin., Comm'r*, 2019 WL 3407175, at *4 (11th Cir. July 29, 2019) (finding *Wilder* inapposite where the ALJ did not reject the only medical evidence regarding the claimant's impairments). Here, the ALJ did not reject the only medical evidence. Instead, the ALJ considered Dr. Fleming's opinion and assigned it little weight while assigning great weight to the opinion of Dr. Bailey. As there was conflicting medical evidence, the *Wilder* standard is inapplicable. Accordingly, the ALJ did not err in assigning partial weight to Dr. Fleming's opinion.

**B.      Plaintiff's Past Work**

Plaintiff has a very heavy initial burden to establish existence of a disability by proving that she is unable to perform her previous work. This stringent burden has been characterized as bordering on the unrealistic. *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982); *Oldham v. Schweiker,* 660 F.2d 1078, 1083 (5th Cir. 1971); *Johnson v. Harris,* 612 F.2d 993, 996–97 (5th Cir.1980); *Williams v. Finch,* 440 F.2d 613, 615 (5th Cir.1971). But it is not insuperable. *Mims v. Califano,* 581 F.2d 1211, 1213 (5th Cir.1978). In determining disability, the "ALJ has a basic duty to develop a full and fair record." *Holder v. Soc. Sec. Admin*, 771 F. App'x 896, 899 (11th Cir. 2019) (citing *Henry v. Comm'r. Of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015.)). Where "there is no evidence of the physical requirements and demands of the claimant′s past work and no detailed description of the required duties was solicited or proffered," the ALJ "cannot properly determine" the nature of the claimant′s past work—and therefore cannot say whether the claimant is still able to perform that work given her current limitations. *Holder*, 771 F. App'x at 899 (citing *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987)).

In this case, the ALJ determined that through the date last insured, Plaintiff could perform past relevant work as a conveyor tender and poultry boner. Further, the ALJ determined that this work did not require the performance of work-related

activities precluded by the claimant's residual functional capacity. Plaintiff argues that there is not substantial evidence to support this finding. However, there was ample evidence in the record regarding the demands of Plaintiff's past work. For example, Plaintiff completed a work history form in her disability application which detailed extensively her roles and duties involved with her past work. (Tr. at 197–201.) Before the ALJ, Plaintiff also testified about the demands of her previous work. (Tr. at 65–67) Importantly, Plaintiff testified that she lost her most recent job as a cashier because of transportation issues and not her societal limitations. (Tr. at 66.) Further, the ALJ asked the VE whether an individual with Plaintiff's age, education, work experience, and residual functional capacity would be able to perform any of Plaintiff's past relevant work. (Tr. at 81–82.) The VE stated that, considering all the factors, an individual would be able to perform Plaintiff's past relevant work as generally or actually performed. (*Id.*) Ultimately, the ALJ looked at the ample amounts of evidence and determined that Plaintiff could perform her past relevant work. Plaintiff has offered no arguments as to why she cannot perform her past relevant work and therefore has not met her burden. *Walden,* 672 F.2d at 838. Accordingly, the ALJ did not err when he determined Plaintiff could perform her past relevant work through the date last insured.

### C.    Hypothetical Questions Posed to the VE

Plaintiff argues that the ALJ's decision was not based upon substantial evidence because the hypothetical questions posed to the VE did not include a limitation of "difficulty with understanding and remembering instructions." For the testimony of a VE "to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of [Plaintiff's] impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). The ALJ must pose a hypothetical question to the VE which comprehensively describes the Plaintiff's impairments. *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (holding that since the hypothetical question upon which the expert base his testimony failed to assume the existence of psychological problems, which the ALJ found to be severe, the decision was not based on substantial evidence).

Here, the ALJ posed the following hypothetical questions to the VE:

ALJ: Okay, let's assume a hypothetical individual of the same age, education, and same work experience as the claimant, and let's further assume able to perform simple, routine, repetitive tasks, occasionally interact with supervisors and coworkers and general public, can respond appropriately to changes in the routine work setting. Could this hypothetical person perform Ms. Peoples' past work?

VE: Yes, Your Honor. As is actually and generally performed.
ALJ: Could this hypothetical perform any other work in the national economy?

VE: Yes, Your Honor. At a medium level would be Laundry Worker I DOT#361684014 svp of 2. In the national economy, approximately 37,000. Second would be a Machine Packager DOT#920685078 svp of

16

2. In the national economy, approximately 30,000. Third example would be that of Industrial Cleaner DOT#381687018 svp of 2. In the national economy, approximately 30,000.
…

ALJ: Okay. Let's again assume a hypothetical person of the same age, education, and work experience, and again assume non-exertional level, who can perform simple, routine, and repetitive tasks, occasional interaction with supervisors, coworkers, and the general public as far as work-related tasks, can respond appropriately to changes in the workplace if gradual and infrequent. Time-off tasks can be accommodated by work breaks. Could this hypothetical individual perform any of the claimant's past work?

VE: Yes, Your Honor. Both, as actually and generally performed.
…

ALJ: Okay, let's again assume a hypothetical individual of the claimant's age, education, and past work experience, and further assume non-exertional only, and is able to perform simple, routine, and repetitive tasks, but not at a production rate pace, occasional interaction with supervisors, incidental interactions with co-workers, and no interaction with the general public. Can tolerate changes in the work setting as long as they are gradual and infrequent. Off task twenty percent of the workday. Could this hypothetical individual perform the claimant's past work?

VE: No, Your Honor.

ALJ: Could this hypothetical individual perform any other work in the national economy?

VE: No, Your Honor. That would be work-preclusive based on my experience, and the DOT does not address off-task behavior.

(Tr. at 81–83.) These hypothetical questions posed by the ALJ comprehensively cover all of Plaintiff's impairments. *Pendley*, 767 F.2d at 1563. The ALJ agreed with

17

Dr. Fleming's opinion that Plaintiff would have difficulty understanding and remembering instructions. (Tr. at 46.) As discussed above, the ALJ determined Plaintiff had the RFC to be able to perform simple, routine, and repetitive tasks and handle changes in routine work settings which are gradual and infrequent. (Tr. at 45.) Having an RFC which acknowledges the ability to perform only simple, routine, and repetitive tasks accounts for any difficulty with understanding and remembering instructions. Further, the RFC assumed changes, such as new instructions, would be gradual and infrequent. Thus, all of Plaintiff's limitations were comprehensively covered by the ALJ's hypothetical questions. Accordingly, the ALJ did not err.

## IV.   Conclusion

Upon review of the administrative record, and considering the arguments by Peoples, this Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered contemporaneously herewith.

**DONE** and **ORDERED** on December 8, 2021.

L. Scott Coogler
United States District Judge

206770